FILED

MAY 1 5 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

In re ) Case No. 11-31221-E-13
)
ANTHONY NORMAN LANDRY and )
TERESA MARIE LANDRY, )
)
        Debtors. )
_____ )
)
ANTHONY NORMAN LANDRY and ) Adv. Pro. No. 12-2675
TERESA MARIE LANDRY, ) Docket Control No. DBR-1
)
        Plaintiffs, )
v. )
)
BANK OF AMERICA, N.A. and )
U.S. BANK, N.A., )
)
        Defendants. )
_____ )

### MEMORANDUM OPINION AND DECISION

Defendants Bank of America, N.A. ("BANA") and U.S. Bank, N.A.,
as Trustee for Certificate holders of LXS 2007-16N Trust Fund
("U.S. Bank")(collectively "Defendants") seek to dismiss the Third
Cause of Action (violation of the automatic stay) and Fourth Cause
of Action (violation of California Rosenthal Fair Debt Collection
Practices Act) in this Adversary Proceeding.  It is asserted that
the Complaint does not state claims upon which relief can be

1  granted. Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012.

2                    **BACKGROUND OF BANKRUPTCY CASE**

3       Plaintiffs Anthony Landry and Teresa Landry ("Plaintiffs")
4  filed their Chapter 13 petition on May 4, 2011.   The court
5  confirmed the Plaintiffs' Amended Chapter 13 Plan on October 4,
6  2011.[1]  The Amended Chapter 13 Plan provides for the payment of the
7  Class 1 Secured Claim of BAC Home Loan Servicing ("Class 1
8  Claim").[2]  The Class 1 Claim is identified as secured by the real
9  property commonly known as 7730 Meadowlark Lane, Sheridan,
10 California.   The post-petition monthly mortgage payments of
11 $2,200.75 (or as adjusted pursuant to the underlying contract for
12 the debt) for this claim are provided to be paid in the confirmed
13 Amended Chapter 13 Plan.

14      On November 23, 2012, Plaintiffs filed this Adversary
15 Proceeding against Defendants.   The Complaint alleges that on
16 July 10, 2012, Defendants filed a Notice of Mortgage Payment
17 Change[3] making demand on the Chapter 13 Trustee to increase the
18 post-petition monthly mortgage payments on the Class 1 Claim to
19 $3,399.22 a month (principal and interest in the amount of

20

21      [1]  First Amended Plan, Bankr. E.D. Cal. No. 11-31221
22 ("Plaintiff's Bankruptcy Case"), Dckt. 15.

23      [2]  BANA is the successor of BAC Home Loans Servicing, LP by
   merger.   Certificate of Merger from the Office of the Secretary of
24 State, State of Texas, dated June 28, 2011, effective July 1, 2011,
   Document No. 374034630002, provided to the court by Bank of America,
25 N.A. in connection with other unrelated proceedings.   Proof of Claim
   Number 1 filed in Plaintiffs' Bankruptcy Case states that U.S. Bank,
26 N.A., Trustee is the creditor and that payments are to be sent to BAC
   Home Loans Servicing, LP for this for the Class 1 Claim as provided in
27 the Plaintiff's Chapter 13 Plan.

28      [3]  Bankr. E.D. Cal. No. 11-31221, July 10, 2012 Docket Entry (no
   docket number).

                                    2

$2,987.44, plus impounds of $411.72). The demand for the increased payment was effective August 1, 2012.

Two of the six causes of action stated by Plaintiffs in the Complaint are at issue in this Motion.  The Third Cause of Action asserts that the filing and service on the Chapter 13 Trustee of the Notice of Mortgage Payment Change seeking payment of the higher amount constituted a violation of the Automatic Stay.  The Fourth Cause of Action asserts that the filing and service of the Notice of Mortgage Payment Change constitute a violation of the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 *et seq.* ("Rosenthal Act").

## MOTION TO DISMISS

A motion to dismiss must state with particularity the grounds upon which the requested relief is based (Fed. R. Civ. P. 7(b), Fed. R Bankr. P. 7007).  For the Third Cause of Action (violation of the automatic stay), the grounds stated are that the Complaint fails to allege facts which demonstrate a violation of the automatic stay because a Notice of Payment Change, as permitted under the Chapter 13 Plan and Federal Rules of Bankruptcy Procedure, provided by Defendants does not constitute a violation of the Automatic Stay.  Further, the Complaint fails to allege any conduct of the Defendants which is asserted to have threatened, harassed, or coerced Plaintiffs.

To the extent that the Third Cause of Action asserts a claim couched as abuse of process, Defendants state that the Complaint fails to allege any use of the court's process in an improper way by the Defendants.  Additionally, the Complaint fails to allege any improper actions by Defendants in attempting to enforce its lien as

part of a claim for abuse of process.

For the Fourth Cause of Action, it is asserted that Defendants are not "debt collectors" as defined by the Rosenthal Act. Further, it asserts that any allegations that Defendants are debt collectors under the Rosenthal Act are conclusory. Finally, that the Complaint fails to allege that Defendants are debt collectors under the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA").

Plaintiffs oppose the Motion, asserting that the Complaint sufficiently states plausible claims against the Defendants and that the pleadings conform to the liberal pleading requirements. Plaintiffs assert that Defendants have continued to collect monies from the Estate (payments from the Chapter 13 Trustee) in excess of the amount which they are entitled for the post-petition mortgage payment in violation of the automatic stay.

Plaintiffs also contend that they have sufficiently pled that Defendants are debt collectors under the Rosenthal Act, citing the court to paragraphs 72-78 of the Complaint. Plaintiffs direct the court to consider the ruling in *McGrew v. Countrywide Home Loans, Inc.*,[4] in response to the two decisions on the issue presented by Defendants in the Memorandum of Points and Authorities filed with the Motion to Dismiss.

**Standard of Review for a Rule 12(b) Motion to Dismiss**

In considering a motion to dismiss, the court starts with the basic premise that the law favors disputes being decided on their merits. A complaint should not be dismissed unless it appears

---

[4]    628 F. Supp. 2d 1237 (S.D. Cal. 2009).

4

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to the relief.[5]  "[A] plaintiff's obligation to provide 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[6]  Any doubt with respect to whether a motion to dismiss is to be granted should be resolved in favor of the pleader.[7]  For purposes of determining the propriety of a dismissal before trial, allegations in the complaint are taken as true.[8]

Federal Rule of Civil Procedure 8 and Federal Rule of Bankruptcy Procedure 7008 require that complaints contain a short, plain statement of the claim showing entitlement to relief and a demand for the relief requested.[9]  Factual allegations must be enough to raise a right to relief above the speculative level.[10] All allegations of fact by the party opposing the motion are accepted as true and are construed in the light most favorable to that party.[11] As the Supreme Court recently interpreted and applied Federal Rule of Civil Procedure 12(b)(6), a plaintiff cannot "plead

---

[5]  *Williams v. Gorton*, 529 F.2d 668, 672 (9th Cir. 1976).

[6]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[7]  *Pond v. General Electric Co.*, 256 F.2d 824, 826-27 (9th Cir. 1958).

[8]  *Kossick v. United Fruit Co.*, 365 U.S. 731, 731 (1961).

[9]  Fed. R. Civ. P. 8(a).

[10]  *Id.*, citing to 5 C. WRIGHT & A. MILLER, FED. PRACTICE AND PROCEDURE § 1216, at 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

[11]  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

5

the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."[12]

In ruling on a 12(b)(6) motion to dismiss, the Court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."[13]  The court need not accept unreasonable inferences or conclusory deductions of fact cast in the form of factual allegations.[14]  Nor is the court required to "accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged."[15]

## THE THIRD CAUSE OF ACTION FAILS TO STATE A CLAIM FOR VIOLATION OF THE AUTOMATIC STAY OR ABUSE OF PROCESS

As the Amended Complaint fails to set forth sufficient matters to establish plausible grounds for a claim based on an alleged violation of the Automatic Stay, the Motion is granted as to the Third Cause of Action.  Even if all of the allegations set forth against Defendants in the Complaint are accepted as true, the third cause of action fails as a matter of law.

Federal Rule of Bankruptcy Procedure 3002.1, added by the 2011 Amendments and effective December 1, 2011, provides a procedure for notice to be provided by a creditor for mortgage

---

[12]  *Ashcroft v. Iqbal,* 556 U.S. 662, 687 (2009).

[13]  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[14]  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[15]  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

1 payment changes during a Chapter 13 case. This rule applies in
2 Chapter 13 cases to claims that are secured by a security interest
3 in the debtor's principal residence and are provided for under
4 section 1322(b)(5) of the Code in the debtor's plan.[16] As a noted
5 bankruptcy treatise posits, compliance with the notice provision of
6 the rule should eliminate any concern on the part of the holder of
7 the claim that informing a debtor of a chance in post-petition
8 payment obligations might violate the automatic stay.[17]

9 In the Plaintiffs' bankruptcy case, Defendants assert a claim
10 secured by a first deed of trust on real property located at
11 7330 Meadowlark Lane, Sheridan, California. This is the
12 Plaintiffs' principal residence. Defendants' claim is provided for
13 in Class 1 of the Plaintiffs' Amended Chapter 13 Plan, which
14 includes curing a pre-petition arrearage in the amount of
15 $31,000.00.[18] Therefore, Defendants are qualified to avail
16 themselves of Federal Rule of Bankruptcy Procedure 3002.1 and file
17 and serve a Notice of Payment Change on Debtor, Debtor's counsel,
18 and the Chapter 13 Trustee of any change in the payment amount,
19 including any change that results from an interest rate or escrow
20 account adjustment.[19] The Notice filed by Defendants on July 10,
21 2012, states the monthly post-petition mortgage payment is
22 $3,399.22 a month, effective August 1, 2012. It discloses that

---

[16] Fed. R. Bankr. P. 3002.1(a).

[17] 9 COLLIER ON BANKRUPTCY ¶ App. 3002.1 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

[18] Bankr. E.D. Cal. No. 11-31221, Amended Chapter 13 Plan, Dckt. 15.

[19] Fed. R. Bankr. P. 3002.1(b).

there is an increase in the escrow account from $0.01 to $411.79. No other change in the post-petition monthly mortgage payment is stated.[20] The attachment to the Notice identifies a monthly escrow amount increase of $227.00 for county taxes. An additional $147.00 is added for a projected shortage for the period of August 2012 through July 2013, for the amount necessary to provide for the escrow account not to have a negative balance. The escrow account begins with a negative ($4,593.94) as of August 2012. Page 10 of the Notice indicates that the Plaintiffs failed to make escrow payments for taxes in the months of June, July, August, September, October, November and December 2011, and January, February, March, April, and May 2012. The ending escrow balance is shown to be a negative ($4,593.18).

Plaintiffs assert that Defendants complying with the Bankruptcy Rules and giving notice of a mortgage payment change, thereby providing Plaintiffs with advance notice and an opportunity to object to Defendants' computation of the post-petition mortgage payment, violates the automatic stay. This is an unsustainable assertion. Compliance with the law in this context to give the Notice of Mortgage Payment Change is not simultaneously a violation of the law.

Further, as this court has explained in an unrelated case, "creditors and debtors are allowed to communicate their disparate positions and rights they seek to assert. It is only when coercion or harassment is coupled with the communication that they can be in

---

[20] Bankr. E.D. Cal. No. 11-31221, Notice of Mortgage Payment Change, No Dckt. No. Provided, filed July 10, 2012.

violation of the automatic stay."[21]    The Ninth Circuit Court of Appeals clearly addressed this situation in *Morgan Guaranty Trust Company of New York v. American Savings and Loan Association*,[22] holding that mere request for payment and informational statement are permissible communications which do not violate the automatic stay.

Because the automatic stay seeks to ensure the orderly administration of a debtor's estate, provide a breathing spell for the debtor, maintain the status quo, and prevent harassment of a debtor and bankruptcy estate by the more sophisticated creditors, a request for payment (as with the presentment of a negotiable instrument) does not violate the automatic stay unless it is accompanied by coercion or harassment, such as immediately or potentially threatening the debtor's possession of property. Examples of communications cited by the Ninth Circuit as violating the automatic stay included: (1) notice of intent to terminate lease, (2) notice of intent to terminate franchise, (3) notice of medical clinic refusal to provide future medical services because of refusal to pay for prior services, (4) letter informing debtor that an attorney had been hired to collect a delinquent account, (5) college refusing to release transcripts as a method to force payment, and (6) a creditor who made repeated visits and telephone calls to a debtor.[23]

Examples of communications not violating the automatic stay

---

[21]  *Singh v. U.S. Bank* (*In re Singh*), 457 B.R. 790, 801 (Bankr. E.D. Cal. 2011).

[22]  804 F.2d 1487, 1491 (9th Cir. 1986).

[23]  *Id.*

9

included: (1) letter sent to debtor's attorney that a credit union would not have further business dealings with the debtor unless debt was reaffirmed, and (2) communications setting out the basis of the claim (informal proof of claim).[24]

In this Adversary Proceeding, Plaintiffs do not allege any coercion or harassment coupled with the Notice of Mortgage Payment Change filed by Defendants.  Plaintiffs contend that the violation of the automatic stay was the act of filing the Notice of Mortgage Payment Change on or about July 10, 2012, in which Defendants seek "more than the amount due under the contract." [25]

Plaintiffs' contentions are further diminished by their own Amended Chapter 13 Plan confirmed by this Court on October 26, 2011.  The Amended Chapter 13 Plan, Section 3.10(d), provides that the automatic stay (to the extent it would apply) is modified to allow the Defendants to send notices concerning changes of interest rate on variable interest rate loans.[26]

Furthermore, Plaintiffs fail to allege any factual or legal grounds in which the Defendants used the court's process as an improper way of attempting to enforce the lien.   The California Supreme Court addressed what constitutes abuse of process in *Rusheen v. Cohen*,[27]

> The common law tort of abuse of process arises when one
> uses the court's process for a purpose other than that

---

[24]   *Id.*

[25]   Compl. ¶ 46, Dckt. 1.

[26]   Bankr. E.D. Cal. No. 11-31221, Amended Chapter 13 Plan, Dckt. 15; *See also* Civil Minute Order Confirming Amended Chapter 13 Plan, Dckt. 48.

[27]   37 Cal. 4th 1048, 1056-1057 (2006).

1    for which the process was designed. (5 Witkin, Summary of
     Cal. Law (9th ed. 1988) Torts, § 459, p. 547; see also
2    *Kappel v. Bartlett* (1988) 200 Cal. App. 3d 1457, 1463.)
     It has been "interpreted broadly to encompass the entire
3    range of 'procedures' incident to litigation." (*Barquis
     v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 104,
4    fn. 4 (Barquis).)

5    "[T]he essence of the tort [is] … misuse of the power of
     the court; it is an act done in the name of the court and
6    under its authority for the purpose of perpetrating an
     injustice." (*Meadows v. Bakersfield S. & L. Assn.* (1967)
7    250 Cal. App. 2d 749, 753.) To succeed in an action for
     abuse of process, a litigant must establish that the
8    defendant (1) contemplated an ulterior motive in using
     the process, and (2) committed a willful act in the use
9    of the process not proper in the regular conduct of the
     proceedings. (*Oren Royal Oaks Venture v. Greenberg,
10   Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168
     (*Oren Royal Oaks Venture*).)

11

12       The alleged demand by Defendants in the Notice of Mortgage

13   Payment Change does not rise to abuse of process.  Defendants are

14   merely asserting what they believe is the proper amount owed and

15   are providing notice through the Notice of Mortgage Payment Change.

16   There are no allegations in the Complaint that the power of the

17   court has been improperly used.   While it is true that if the

18   Plaintiffs elected not to object to the amount in the Notice of

19   Payment Change, under the confirmed Chapter 13 Plan the Trustee

20   would then begin making payments at the higher amount.   If the

21   Plaintiffs failed to increase their plan payments, the Chapter 13

22   Trustee would then file a motion to dismiss the Chapter 13 case.

23   The Plaintiffs, as any other person, have ready access to the

24   courts and may contest a position or rights asserted by any

25   creditor in the bankruptcy case.   Merely because Plaintiffs

26   disagree with Defendants' computation of a mortgage payment change

27   does not result in this Notice creating a state law claim for abuse

28   of process.

11

The Plaintiffs have failed to present the court with any plausible claim for violation of the automatic stay. The court grants the Defendants' Motion to Dismiss on the third cause of action for failure to state a claim for which relief can be granted.

## PLAINTIFFS SUFFICIENTLY ALLEGE THAT DEFENDANTS ARE DEBT COLLECTORS UNDER THE ROSENTHAL ACT IN THE FOURTH CAUSE OF ACTION

In the Motion to Dismiss, Defendants assert that the Complaint fails to set forth sufficient factual matters to establish plausible grounds that Defendants are "debt collectors" as that term is defined under the Rosenthal Act and the FDCPA. Beginning with the later contention, Defendants are correct, Plaintiffs do not allege that Defendants are debt collectors under the FDCPA. The Fourth Cause of Action is clear that relief is sought only under the Rosenthal Act.

The Complaint alleges the following concerning the relationship between Defendants and the Plaintiffs as relevant to this issue:

A. Plaintiffs have a debt (loan) they owe to U.S. Bank, N.A. Compl. ¶ 11.

B. Bank of America, N.A. claims that Plaintiffs owe Bank of America, N.A. money. Compl. ¶ 8.

C. U.S. Bank, N.A. claims that Plaintiff owe U.S. Bank, N.A. money. Compl. ¶ 10.

D. Bank of America, N.A. services the debt Plaintiff's owe to U.S. Bank, N.A. Compl. ¶ 11.

E. The debt owed to U.S. Bank, N.A. is secured by real property commonly known as 7330 Meadowlark Lane, Sheridan, California. Compl. ¶ 11, Proof of Claim No. 1 filed by Defendants.

F. Bank of America, N.A. and U.S. Bank, N.A. have miscomputed the amount owed for monthly installments on

1    the debt.  Compl. ¶¶ 18, 19.

2    G.    Bank of America, N.A. and U.S. Bank, N.A. have demanded
           payment of monthly installments in an amount greater than
3          owed by the Plaintiffs.  Compl. ¶ 20.

4    H.    Bank of America, N.A. and U.S. Bank, N.A. have misstated
           the amount owed monthly by the Plaintiffs and have
5          demanded payment of monies in excess of what is owed by
           the Plaintiffs.  Compl. ¶ 78.

6
**The Rosenthal Act Defines Who is a Debt Collector for**
7    **Purposes of California Law**

8         Defendants direct this court to several trial court decisions

9    for the proposition that a creditor or loan servicer cannot be a

10   debt collector under the Rosenthal Act.  The first cited decision

11   is *Caballero v. Ocwen Loan Servicing*.[28]    In this unreported

12   decision, that court addressed a claim arising under the FDCPA, not

13   the Rosenthal Act.[29]

14        The second cited decision is *Glover v. Fremont Investment and*

15   *Loan*.[30]   In *Glover*, the trial court summarily dismissed the

16   Rosenthal Act claim based upon the holding in *Caballero*, without

17   discussion of the statutory definition of a debt collector under

18   the Rosenthal Act.  Rather, the decision cites *Caballero*, an FDCPA

19   case, as the authority for the proposition now asserted by

20   Defendants that a creditor or servicing agent for a debt secured by

21   real estate is not a debt collector under the Rosenthal Act.[31]

22

23   [28]  2009 U.S. Dist. LEXIS 45213 (N.D. Cal. 2009).

24   [29]  *Id.* at *1.

25   [30]  2009 U.S. Dist. LEXIS 117890 (N.D. Cal 2009).

26   [31]  Id. at *24-*25. The Rosenthal Act and FDCPA claims was
     dismissed because the complaint in that case merely stated "Plaintiff
27   alleges that 'BANK 2 violated the Act in one or more of the following
     ways' and then lists the requirements of the statute...These claims
28   fail for an additional reason: Deutsche is not a 'debt collector'
     within the meaning of the debt collection statutes. Rather, Plaintiff

13

This court acknowledges that some trial courts have interpreted the Rosenthal Act in a manner that mortgage service companies, taking actions to obtain payment for the original creditor or the assignee of the original creditor, are not "debt collectors" as defined under the FDCPA and Rosenthal Act because the activities are related to the ultimate foreclosure on real property securing the debt.   In its extensive Reply Brief, Defendants cite a series of mostly unreported decisions from several district courts.   Though withholding these citations until filing its reply brief (ensuring that Plaintiffs could not address in writing the numerous newly cited decisions), the court has reviewed these mostly unreported additional decisions upon which Defendants rely: *Patacsil v. Wilshire Credit Corporation;*[32] *Pittman v. Barclays Capital Real Estate, Inc.;*[33] *Pok v. American Home Mortgage Servicing, Inc.;*[34] *Gallegos v. Recontrust Co.;*[35] *Fuentes v. Deutsche Bank;*[36] *Padayachi v. Indymac Bank;*[37] *Sipe v. Countrywide*

---

alleges that Deutsche was the loan servicer. Compl. ¶ 19. Therefore, amendment of these claims against Deutsche would be futile. See e.g., *Caballero v. Ocwen Loan Serv.*, 2009 U.S. Dist. LEXIS 45213, 2009 WL 1528128 *1 (N.D. Cal. 2009) ('creditors, mortgagors and mortgage servicing companies are not 'debt collectors' and are exempt from liability under the [FDCPA]. . . Defendant Ocwen is a 'loan servicer.' Therefore it is not a 'debt collector' and no claim can be stated against it under the FDCPA.')" *Id.*

[32]  2010 U.S. Dist. LEXIS 10414, at *8-9 (E.D. Cal. Feb. 5 2010).

[33]  2009 U.S. Dist. LEXIS 34885, at *3 (S.D. Cal. Apr. 24, 2009).

[34]  2010 U.S. Dist. LEXIS 9016, at *7-8 (E.D. Cal. Feb. 2, 2010)

[35]  2009 U.S. Dist. LEXIS 6365, at *3 (S.D. Cal. Jan. 29, 2009)

[36]  2009 U.S. Dist. LEXIS 57931, at *3 (S.D. Cal. July 8, 2009)

[37]  2010 U.S. Dist. LEXIS 46115, at *6 (N.D. Cal. April 7, 2010)

14

*Bank;*[38] *Pontiflet-Moore v. GMAC Mortgage;*[39] and *Rosal v. First Federal Bank of California.*[40]

A common thread running through these decisions is the conclusion that a debt secured by a deed of trust cannot be subject to the Rosenthal Act, and therefore any collection activities to obtain payment on that secured debt are not subject to the Rosenthal Act. Many of the cases relied on by Defendants cite to *Ines v. Countrywide Home Loans, Inc.,*[41] as the seminal case for this proposition. The court in *Ines* came to the conclusion that since foreclosing on real property is not the collection of a debt under the FDCPA, then it would similarly not be a debt under the Rosenthal Act because some provisions of the FDCPA have been incorporated into the Rosenthal Act. As discussed herein, the incorporation of several FDCPA provisions into the Rosenthal Act does not amend the California definition of debt collector under the Rosenthal Act and replace it with the more limited definition under the FDCPA.

The court also notes that Defendants' proposition that a debt is not subject to the FDCPA if it is secured by real or personal property, and therefore neither should the collection of such debts be subject to the Rosenthal Act, is not universally accepted. Contrary decisions not supporting the Defendants arguments, which were not cited to or addressed by Defendants in their original

---

[38] 2010 U.S. Dist. LEXIS 70320, at *46-*47 (E.D. Cal. July 13, 2010)

[39] 2010 U.S. Dist. LEXIS 11043, at *6 (E.D. Cal. Jan. 15, 2010)

[40] 671 F. Supp. 2d 1111, 1135 (N.D. Cal. 2009)

[41] 2008 U.S. Dist. LEXIS 88739at * 3 (S.D. Cal. Nov. 3, 2008).

Memorandum of Points and Authorities or the extensive Reply Brief, include both Circuit Court of Appeals and District Court decisions. One example is *Wilson v. Draper & Goldberg, P.L.L.C.*,[42] in which the Court of Appeals concluded that the debt secured by a deed of trust continued to be subject to the FDCPA even after the foreclosure was commenced.

> We disagree. Wilson's "debt" [secured by a deed of trust] remained a "debt" even after foreclosure proceedings commenced. See *Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 234 (3d Cir. 2005) ("The fact that the [Pennsylvania Municipal Claims and Tax Liens Act] provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt."). Furthermore, Defendants' actions surrounding the foreclosure proceeding were attempts to collect that debt. See *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998) (concluding that an eviction notice required by statute could also be an attempt to collect a debt); *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (Colo. 1992) ("[A] foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt.").

> Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods. See *Piper*, 396 F.3d at 236 ("We agree with the District Court that if a collector were able to avoid liability under the [Act] simply by choosing to proceed *in rem* rather than *in personam*, it would undermine the purpose of the [Act].")(internal quotation marks omitted).[43]

Other cases rejecting a non-statutory exemption from the FDCPA or Rosenthal Act because the debt is secured by real or personal

---

[42]   443 F.3d 373 (4th Cir. 2006).

[43]   *Id.* at 376.

16

property include: *Glazer v. Chase Home Finance LLC*,[44] (finding a home loan is a debt subject to the FDCPA, which governs the conduct of debt collectors for both secured and unsecured debts); *Reese v. Ellis, Painter, Ratteree & Adams, LLP*,[45] (finding a promissory note secured by a mortgage is a debt subject to the FDCPA); *Vargas v. HSBC Bank USA, N.A.*,[46] (finding the FDCPA covers foreclosure-related debt collection activities); *McGrew v. Countrywide Home Loans, Inc.*,[47] (stating "[i]t is plain that the California legislature understands the Rosenthal Act may apply to foreclosure proceedings...the omission of the lenders and servicers from Cal. Civ. Code § 2924(b) means that such actors may be held liable for any unlawful debt collection activities during foreclosure."); *Castrillo v. American Home Mortgage Servicing, Inc.*,[48] (finding a debt collector is not immunized from liability for violating the FDCPA merely because the debt is secured by a deed of trust and the collector is proceeding with a foreclosure sale); and *Kojetin v. C U Recovery, Inc.*,[49] (finding a promissory note secured by a vehicle is a debt subject to the FDCPA).

These reported decisions cast doubt on the basic premise underlying the unreported decisions relied on by the Defendants that "a debt is not subject to the FDCPA if it is secured by a

---

[44]   704 F.3d 453, 460 (6th Cir. 2013).

[45]   678 F.3d 1211, 1216-1217 (11th Cir. 2012).

[46]   2012 U.S. Dist. LEXIS 128661, at *16 (S.D. Cal. 2012).

[47]   628 F. Supp. 1237, 1243 (S.D. Cal. 2009).

[48]   670 F. Supp. 2d 516, 523-24 (E.D. La. 2009).

[49]   212 F.3d 1318 (8th Cir. 2000).

mortgage or deed of trust, therefore it could not be covered by the Rosenthal Act."

**ANALYSIS AND STATUTORY CONSTRUCTION OF THE ROSENTHAL ACT**

The court's analysis begins with the plain language of the Rosenthal Act itself. It is incumbent on this court to interpret and apply state law as would the California Supreme Court.[50] The rules of statutory construction utilized by the California Supreme Court are essentially the same as used by the courts for interpreting federal law. To determine the intent of the statute or ordinance, the court first looks to the plain language and ordinary meaning of the words used. The words are read in context of the statute, considering the nature and purpose of the enactment. If the language is clear, then no further interpretation of the statute is necessary. If the language is ambiguous, then the court considers extrinsic evidence, which includes the legislative history, public policy, and the statutory scheme of which the statute is a part.[51] Finally, if after reviewing the plain language and extrinsic aids the meaning of the statute remains unclear, the court, proceeding cautiously, applies reason, practicality, and common sense to the statute.[52]

**Basic Statutory Definitions Under the Rosenthal Act**

The California Legislature defines who is a "debt collector" for purposes of California law in the Rosenthal Act, as follows,

---

[50]  *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993).

[51]  *Professional Engineers in California Government v. Kempton*, 40 Cal. 4th 1016, 1037 (2007).

[52]  *Woodland Park v. City of East Palo Alto Rent Stabilization Board*, 181 Cal. App. 4th 915, 920 (2010).

> The term "debt collector" means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law.[53]

California law defines "debt collection," to be "any act or practice in connection with the collection of consumer debts."[54] A consumer debt is statutorily defined to be "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction."[55] Finally, a "consumer credit transaction" is statutorily defined to be "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes."[56]

This is a very broad definition requiring only,

    a.    That a person (natural or fictitious, § 1788.2(g)),

    b.    In the ordinary court of his, her, or its business,

    c.    On behalf of him/her/itself or others,

    d.    Engage in any act or practice in connection with the collection of,

    e.    Money, property or their equivalent, due or owing relating to,

    f.    A transaction between a natural person and another person,

---

[53]   Cal. Civ. Code § 1788.2(c).

[54]   *Id.* § 1788.2(b).

[55]   *Id.* § 1788.2(f).

[56]   *Id.* § 1788.2(e).

g.   For property, services or money is acquired on credit by that natural person from such other person, and

h.   Was primarily for personal, family, or household purposes of the natural person.

Nothing in the statutory definition excludes a consumer debt from the Rosenthal Act merely because it is secured by real or personal property.   Further, nothing in the statutory definition excludes a person from the Rosenthal Act merely because he, she, or it is attempting to collect a consumer debt that is for a transaction that he, she or it entered into with the consumer.   By its plain language, the term "debt collector" as used in the Rosenthal Act includes a creditor who is attempting to collect any consumer debt owed to that creditor.[57]

In 1999 the California Legislature grafted several FDCPA provisions onto the Rosenthal Act.   California Code of Civil Procedure § 1788.17 provides,

Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.   However, subsection (11) of

---

[57]   The widely used California Practice Guide, *Enforcement of Judgments and Debts*, also states, "**Creditors included:** Thus, the state FDCPA [Rosenthal Act] applies both to *third party debt collectors* (e.g. collection agencies) and to *creditors* who regularly collect consumer debts."   California Practice Guide, Enforcement of Judgments and Debts ¶ 2:127 (Judge Alan M. Ahart, The Rutter Group 2012, Rev. # 1 2011 (emphasis in original).

Section 1692e[58] and Section 1692g[59] shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

· The California Legislature carefully excluded a limited subclass of Rosenthal Act statutorily defined debt collectors from only two of the state law obligations arising under grafted on 15 U.S.C. § 1692e(11) (initial disclosure, commonly called the Mini-Miranda, to be given in the first collection communication with the consumer debtor) and § 1692g (requirement to validate the debt if consumer requests in writing within 30 days of the initial collection communication). However, all of the other grafted FDCPA provisions apply in full force and effect for all Rosenthal Act defined debt collectors.

The subclass of Rosenthal Act defined debt collectors given an

---

[58]  15 U.S.C. 1692e(11) requires that the FDCPA debt collector provide the Mini-Miranda, a disclosure in the initial written communication, and initial oral communication if it precedes the initial written communication, with the debtor that the communication is from a debt collector and that it is an attempt to collect a debt.

[59]  15 U.S.C. § 1692g requires that the initial written communication disclose to the debtor (1) the amount of the debt, (2) the name of the creditor to whom the debt is owed, (3) a statement if the debtor does not dispute the debt in writing within 30 days the debt collector will assume the debt is valid, (4) that if the debt is disputed in the 30-day period the debt collector will obtain verification of the debt from the creditor, and (5) that upon written request within the 30-day period the debt collector will provide the debtor with the name and address of the original creditor, if different from the current creditor for whom the debt is being collected.

A statutory exception is provided in 1692(g)(e) that forms and notices not relating to the collection of the debt and required by the Internal Revenue Code (26 USCS §§ 1 et seq.), title V of Gramm-Leach-Bliley Act (15 USCS §§ 6801 et seq.), or federal or state law relating to notice of data security breach or privacy are not treated as a "communication" under the FDCPA.

1  exemption from these two provisions are (1) "any officer or
2  employee of a creditor while, in the name of the creditor,
3  collecting debts for such creditor;" or (2) "any person while
4  acting as a debt collector for another person, both of whom are
5  related by common ownership or affiliated by corporate control, if
6  the person acting as a debt collector does so only for persons to
7  whom it is so related or affiliated and if the principal business
8  of such person is not the collection of debts;...."[60]  Clearly, the
9  only reason that such exceptions were required to be created by the
10 California Legislature to the definition of a Rosenthal Act debt
11 collector can be that without them, officers or employees of the
12 creditor, the creditor, and a creditor owned and controlled
13 collection agency subsidiary, are otherwise within the broad
14 Rosenthal Act definition of a debt collector.

15      In considering the Defendants' argument and the authorities it
16 has cited, it is critical to understand that the FDCPA statutory
17 definition of a debt collector differs significantly from the
18 California state law definition of a debt collector under the
19 Rosenthal Act.  Under the FDCPA a debt collector is defined to be,

20      **[a]ny person who** uses any instrumentality of interstate
        commerce or the mails in any business the principal
21      purpose of which is the collection of any debts, or who
        **regularly collects** or attempts to collect, directly or
22      indirectly, **debts owed or due or asserted to be owed or
        due another.** Notwithstanding the exclusion provided by
23      clause (F) of the last sentence of this paragraph, the
        **term includes any creditor who,** in the process of
24      collecting his own debts, **uses any name other than his
        own which would indicate that a third person is
25      collecting or attempting to collect such debts.** For the
        purpose of section 808(6) [15 UCS § 1692f(6)], such term
26      also includes any person who uses any instrumentality of
        interstate commerce or the mails in any business the

27

28
        ───────────────
        [60]  15 U.S.C. 1692a(6)(A), (B).

principal purpose of which is the enforcement of security interests....[61]

First, with the limited exception of a creditor using an alias to make it appear that a third-party is involved, the FDCPA defined debt collector is limited to a person attempting to obtain payment on an obligation which was originally owed to another person. Commonly an FDCPA covered debt collector is called a "third-party debt collector." (The original creditor and debtor being the first two parties to the transaction.)

In grafting the FDCPA onto state law, the California Legislature recognized this difference, creating the limited exceptions for the Mini-Miranda and validation notice requirements for creditors who are debt collectors under the Rosenthal Act. However, the basic provisions of the Rosenthal Act that a person shall not lie, cheat, steal, threaten, or abuse a consumer in attempting to obtaining payment on a consumer debt do not interfere with the good faith collection of the consumer debt – whether it be secured or unsecured. To the extent that state law provides a procedure for obtaining payment on the debt, such as a statutory non-judicial foreclosure process, the California Legislature has provided the creditor, third-party debt collector, servicing agency, and consumer with clear benchmarks by which the collection activities can be measured. There is nothing inconsistent with the requirements of the Rosenthal Act and it being applied to a creditor with a secured claim.

---

[61]    15 U.S.C. § 1692a(6) (emphasis added).

**State Law Provides an Express Exemption From The
Rosenthal Act Only For The Trustee Under a Deed of Trust**

Defendants' argument that there needs to be a non-statutory, implied exemption from the Rosenthal Act for a consumer debt secured by a deed of trust is belied by the fact that the California Legislature has already expressly addressed the issue. California Civil Code § 2924(b) provides a statutory exemption from the Rosenthal Act for a trustee under a deed of trust as follows,

> In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. **In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.**[62]

The California Legislature has carefully constructed the exemption to apply only (1) to the trustee under a deed of trust and (2) only to that trustee performing the acts required under Article 1, Mortgages in General, of Chapter 2, Mortgages, of Title 14 of the California Civil Code, Lien.  In enacting this exemption from the Rosenthal Act, the California Legislature  has clearly limited to the acts of a trustee exercising the powers under a deed of trust. The California Legislature has not created, or intended to create an implied, free ranging exemption by which a trustee under a deed of trust (and thereby the creditor owed the consumer debt) becomes an unregulated debt collector for any and all purposes.

If Defendants were correct that the Rosenthal Act did not apply to debts which were secured by real property or for which

---

[62]   Cal. Civ. Code § 2924(b) (emphasis added).

foreclosure proceedings could be commenced or were being prosecuted, then no legislative reason would have existed for enacting California Civil Code § 2924(b).

**Legislative History of the Rosenthal Act[63]**

Given the dearth of statutory analysis presented to the court by the parties, in addition to the plain language of the statute the court has reviewed the legislative history available from the California State Archives maintained by the California Secretary of State. California Senate Bill 237, 1977, is the legislation by which the Rosenthal Act (formerly known as the Robbins-Rosenthal Fair Debt Collection Practices Act) was enacted. It is clear from the legislative history that the plain language of the statute means what it says – all debt collectors, whether original creditors, agents of original creditors, or third-party collection agencies, for all consumer credit transaction debts, whether secured or unsecured, are covered by the Rosenthal Act.

The Assembly Judiciary Committee Analysis issued for the August 11, 1977 hearing on for SB 237, states,

> This measure governs all debt collection practices arising from the extension of credit if the credit was obtained primarily for personal, family, or household purposes. **Regulated debt collectors include any person who,** in the **ordinary course of business, on behalf of himself** or others, **engages in debt collection** and any person who composes and sells forms, letters, and other collection media used for debt collection. Debt collectors currently licensed by the Bureau of Collections and Investigations [traditional third-party collection agencies] would be subject to regulation by

---

[63] The legislative history documents are filed in this Adversary Proceeding as a separate addendum to this Memorandum Opinion and Decision, set as the next docket entry in order. This addendum may be reviewed using PACER access to the court's public records or at the courthouse itself.

1    this measure.  Attorneys are specifically exempted.[64]

2        After SB 237 was passed by the Legislature, the California

3    Department of Consumer Affairs issued its Enrolled Bill Report to

4    then Governor Edmund G. Brown, Jr., stating,

5        The collection practices of collection agencies licensed
         by the Bureau of Collection and Investigative Services
6        [traditional third-party collection agencies] are
         regulated by the Bureau.  Licensed collection agencies
7        are responsible for about 10% of the debt collection in
         California.  The other 90% is performed by in-house
8        collectors (for banks, retailers, finance companies, and
         so on.)...
9
         The Robbins-Rosenthal Fair Debt Collection Practices Act
10       [renamed the Rosenthal Act in AB 969, 1999] would be **a
         comprehensive act governing the debt collection practices
11       of all person who in the ordinary course of business on
         behalf of themselves** or others engage in the collection
12       of consumer debts.  The Act would thus **apply to debt
         collectors licensed by the Bureau of Collection and
13       Investigative Services (CIS) and to in-house collectors**
         (such as bankers, credit unions, savings and loans,
14       personal property brokers, industrial loan companies, and
         retailers)...
15
         ...
16
         A. SPECIFIC FINDINGS
17
         The Robbins-Rosenthal Fair Debt Collection Practices Act
18       would be a comprehensive act governing the debt
         collection practices of **all persons who in the ordinary
19       course of business on behalf of themselves or others**
         engage in the collection of consumer debts. The Act would
20       thus apply to debt collectors licensed by the Bureau of
         Collection and Investigative Services (CIS) and to
21       in-house collectors (such as bankers, credit unions,
         savings and loans, personal property brokers, industrial
22       loan companies, and retailers)...

23       D . RECOMMENDATION : Sign

24       The Department of Consumer Affairs worked with Senator
         Robbins on the August amendments and we are satisfied
25       that this amended bill would constitute a significant
         improvement in consumer protection against unfair debt
26

27  _____

28       [64]  Fair Debt Collection Practices Act Bill Digest: Hearing on
     California SB 237 Before the Assembly Comm. on Judiciary, August 11,
     1977 (emphasis added).

1      collection practices. While the bill's provisions are in
       some cases less strict than the new regulations governing
2      the collection agencies licensed by the Bureau of
       Collection and Investigative Services, **we believe that**
3      **the bill's impact on the presently unregulated collection**
       **practices of in-house collectors – whose activities make**
4      **up more than 90% of debt collection --** would represent a
       positive gain for consumers.[65]
5

6         The Rosenthal Act was enacted specifically to make the

7  creditor, not merely the third-party collection agency, subject to

8  the California debt collection laws.  This is consistent with the

9  plain language of the statute defining debt collector expansively,

10 so as to address the 90 percent of the otherwise unregulated

11 creditor debt collection activities.

12        The court has also reviewed the legislative history for the

13 1999 amendments to the Rosenthal Act, AB 969, by which specific

14 provisions of the FDCPA were made part of state law.  The Senate

15 Rules Committee Report, issued for the Third Reading of AB 969 on

16 the Senate Floor, states,

17        This bill provides that **every debt collector collecting**
          **or attempting to collect a consumer debt shall comply**
18        **with the provisions of Sections 1692b to 1692j,**
          inclusive, of Title 15 of the United States Code.  These
19        sections provide, among other provisions, that a
          collector may not harass, oppress, or abuse a debtor, nor
20        use obscene language.   Third parties may only be
          contacted with the debtor's permission.
21            . . .

22

23        [65]  California Department of Consumer Affairs, Enrolled Bill
          Report for SB 237, September 15, 1977 (emphasis added).  *See also*
24        California Department of Finance, Enrolled Bill Report for SB 237,
          September 15, 1977, stating,
25
          This bill would substantially expand the coverage of debt
26        collection law.  Under existing law, only the debt
          collection practices of <u>licensed</u> collection agencies are
27        regulated.  This bill would increase the coverage of such
          law as to include in-house debt collectors such as banks and
28        retailers (approximately 90 percent of the debt collectors
          in the State).

                              27

> This duel scheme of regulation [FDCPA and Rosenthal Act] can sometimes become confusing, rendering state law unused. The sponsor argues this bill is needed in order to establish clear lines of acceptable behavior, pointing out that other states, such a Pennsylvania and Massachusetts, have similarly incorporated federal provisions to harmonize state and federal law. The [California Attorney General] adds that, **"consistent federal and state standards** would facilitate compliance and enforcement and **provide a level playing field for all engaged in debt collection activity."**[66]

The Senate Judiciary Committee Analysis contains similar language that the FDCPA provisions shall apply to all debt collectors (with the specified two exceptions), and adds the further information from the sponsor of AB 969, the California Attorney General,

> The bill's sponsor, the Attorney General, (AG) adds, "the Attorney General's office has sponsored AB 969 to **harmonize state and federal law by applying federal debt collection standards and remedies to all parties defined as debt collectors under California law."**[67]

Again, with the 1999 amendments the legislative history is clear – all provisions of the Rosenthal Act, including the grafted on FDCPA provisions (subject to the two express exceptions), shall apply to all debt collectors as defined under the Rosenthal Act. There is no evidence of any non-statutory intent or belief that an unstated general exception was created using the federal definition of debt collector to change the definition in the Rosenthal Act.

## COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANTS ARE DEBT COLLECTORS SUBJECT TO THE ROSENTHAL ACT

While leaving a little bit to be desired, in the context of

---

[66] California Senate Rules Committee, Senate Floor Analysis for AB 969, July 23, 1999 (emphasis added).

[67] Hearing on AB 969 Before the California Senate Judiciary Committee, 1999-2000 Regular Session, July 7, 1999 (emphasis added).

Defendants' contention that a creditor with a claim secured by a deed of trust is not a "debt collector" as statutorily defined by the Rosenthal Act, Plaintiffs have sufficiently alleged that Defendants are debt collectors to survive this Motion to Dismiss. The Motion does not state with particularity the grounds by which the legal conclusion is asserted that "Plaintiffs fail to properly allege that Defendants are debt collectors as defined under the Rosenthal Fair Debt Collection Practices Act (California Civil Code 1788)." Fed. R. Civ. P. 7(b), Fed. R. Bankr. PO. 7007. The Points and Authorities, to the extent that they constitute the motion, assert that a creditor and mortgage service company cannot, as a matter of law, be a debt collector under the Rosenthal Act. As addressed above, such a contention is erroneous.

Here, Plaintiffs are natural persons who are the Chapter 13 debtors. Defendants assert that they are owed a debt which is secured by the Plaintiffs' residence, 7330 Meadowlark Lane. This is identified as the Plaintiffs' principal residence in the Notice of Payment Change filed by the Defendants which is the subject of the Complaint. No contention has been made that this claim does not arise from a consumer credit transaction.[68] From the Complaint, Notice of Payment Change, and Schedules in the bankruptcy case, the debt being collected is a consumer debt.

The only possible missing element is that Defendants in the ordinary course of business attempt to collect debts covered by the

---

[68] On the Petition filed in the Plaintiffs' bankruptcy case they list the subject Property as their Street Address. Petition, Bankr. E.D. Cal. 11-31221 Dckt. 1. The Petition also states that the Plaintiffs' debts are primarily consumer debts as defined under 11 U.S.C. § 101(8), "primarily for a personal, family, or household purpose."

Rosenthal Act.  The court takes judicial notice that both BANA and U.S. Bank regularly collects consumer debts from natural persons, whether they are voluntary payments, judicially enforced payments, bankruptcy plan payments, non-judicial foreclosures, or through the exercise of the power to sell personal property under the California Commercial Code, for obligations which are consumer debts.[69]  There can be little dispute that it is commonly known in the community, state, and nation that both of these banks regularly collect their own consumer debts from natural persons, as well as other debts for trusts or other entities for which they have accepted such a responsibility (such as the trustee of a mortgage loan portfolio trust).  If either or both of these Defendants seriously believe that the court's judicial notice is incorrect, they can address it in a motion for summary judgment or other appropriate motion based on this limited issue.

---

[69]  Where certain indisputable facts are so within the common and general knowledge of the community, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, the judicial notice doctrine serves as a substitute for formal proof.  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).  Even where a fact may not be of common knowledge, so long as the fact is capable of immediate and accurate determination from a credible source, a court may take judicial notice. *Id.* at 201(b)(2).

No formula exists for determining the appropriate use of judicial notice under Federal Rule of Evidence 201(b)(2). *See* 2 MCCORMICK ON EVID. § 330 (6th ed.).  Frequently, courts utilize judicial notice with regard to information contained in public records. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated in part on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

Given the narrow scope of the grounds in the Motion to Dismiss, that the Defendants are not debt collectors as defined under the Rosenthal Act, that portion of the motion seeking to dismiss the Fourth Cause of Action is denied.[70]

## CONCLUSION

The court grants the Motion to Dismiss Plaintiffs' Third Cause of Action and denies the Motion to Dismiss the Fourth Cause of Action. No leave is granted to file an amended complaint. Taking the Plaintiffs' recitation of the facts as true, there is little which could be corrected through an amended pleading. The Plaintiffs may file a motion to amend the Complaint, after the answer is filed, to the extent that they believe that sufficient factual allegations can be alleged in good faith to state a plausible claim for violation of the stay consistent with the established law in this Circuit.

///

---

[70] The denial of the Motion to Dismiss the Fourth Cause of Action should not be misinterpreted as a determination by the court that the alleged conduct would constitute a violation of the Rosenthal Act. More nuanced issues exist concerning the interplay of the bankruptcy claims process, confirmation of a bankruptcy plan, the correct amount of payments which the court orders under a confirmed plan, litigation privilege, and the extent to which the Bankruptcy Code and Federal Rule of Bankruptcy Procedure preempt state law with respect to the federal judicial bankruptcy process. What is clear is that a contention that a creditor or creditor's agent attempting to obtain payment on a debt is not a "debt collector" under Rosenthal Act is incorrect.

Bank of America, N.A. and U.S. Bank, N.A., as Trustee for Certificate holders of LXS 2007-16N Trust Fund, filed their respective answers after the oral argument and the court discussed its ruling on this Motion.   Dckt. 30.

Dated: May 14, 2013

RONALD H. SARGIS, Judge
United States Bankruptcy Court

## **CERTIFICATE OF MAILING**

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that the attached document(s) was served by mail to the following entities listed at the address(es) shown below:

Service List:

David Cusick
PO Box 1858
Sacramento, CA 95812-1858

Richard Hall
PO Box 237
Auburn, CA 95604

Anthony Landry
7330 Meadow Lark Lane
Sheridan, CA 95681

Teresa Landry
7330 Meadow Lark Lane
Sheridan, CA 95681

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Daniel Ruby
101 2nd St #1800
San Francisco, CA 94105

DATE: 5.16.13



Deputy Clerk